JAY GOLDBERG, P.C.
250 Park Avenue
Suite 2020
New York, NY 10177
T: (212) 983-6000
F: (212) 983-6008
office@jaygoldberg.com
*Attorney for Plaintiff United States Representative Charles B. Rangel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States Representative<br>Charles B. Rangel,<br>2354 Rayburn House Office Building<br>Washington, D.C. 20515<br><br>       Plaintiff,<br><br>       v.<br><br>Representative John A. Boehner<br>H-232 U.S. Capitol<br>Washington D.C. 20515<br>As Speaker of the United States<br>House of Representatives,<br><br>Karen L. Haas<br>H-154, U.S. Capitol<br>Washington, D.C. 20515<br>As Clerk of the House of Representatives,<br>and as keeper of The Journal of the<br>House's Proceedings,<br><br>Representative Zoe Lofgren<br>1401 Longworth House Office Building<br>Washington, D.C. 20515<br>As former Chair of the Committee on<br>Standards of Official Conduct of the House<br>of Representatives and as former Chair<br>of its then Adjudicatory Subcommittee, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.<br><br><br>**COMPLAINT** |

Representative Jo Bonner )
1015 Longworth House Office Building )
Washington, D.C. 20515 )
As former Ranking Member of the )
Committee on Standards of Official )
Conduct of the House of Representatives )
and as former Chairman of the Committee )
on Ethics of the House of Representatives, )
)
R. Blake Chisam )
1101 15th Street Northwest #700 )
Washington, D.C. 20005 )
As former Staff Director / Chief Counsel )
of the Committee on Standards of Official )
Conduct of the House of Representatives, )
and as Chief Counsel of its then )
Adjudicatory Subcommittee, )
)
C. Morgan Kim )
1001 Pennsylvania Avenue N.W., )
Washington, D.C. 20004 )
As former Deputy Chief Counsel of the )
Committee on Standards of Official )
Conduct of the House of Representatives, )
)
Stacey Sovereign )
220 Spring St., Suite 500 )
Herndon, VA 20170 )
As former Counsel to the Committee on )
Standards of Official Conduct of the )
House of Representatives, )
)
Representative Michael T. McCaul )
1015 Longworth House Office Building )
Washington, D.C. 20515 )
As a former Member of the Committee on )
Standards of Official Conduct of the House )
of Representatives and as Ranking )
Member of its then Adjudicatory )
Subcommittee, )
)
Representative K. Michael Conaway )
1015 Longworth House Office Building )
Washington, D.C. 20515 )
As a former Member of the Committee on )
Standards of Official Conduct of the House )

of Representatives and its then )
Adjudicatory Subcommittee, and as current )
Chairman of the Committee on Ethics, )
　　　　　　　　　　　　　　　　　　 )
Representative Charles W. Dent )
1015 Longworth House Office Building )
Washington, D.C. 20515 )
As a former Member of the Committee on )
Standards of Official Conduct of the House )
of Representatives and its then )
Adjudicatory Subcommittee, )
　　　　　　　　　　　　　　　　　　 )
Representative Gregg Harper )
1015 Longworth House Office Building )
Washington, D.C. 20515 )
As a former Member of the Committee on )
Standards of Official Conduct of the House )
of Representatives and its then )
Adjudicatory Subcommittee, )
　　　　　　　　　　　　　　　　　　 )
　　　　　Defendants. )
_____)

Plaintiff, United States Representative CHARLES B. RANGEL, having been disciplined by the House of Representatives (the "House") on the recommendation of the Committee on Standards of Official Conduct (the "Committee") by a vote of the full House on December 2, 2010, by and through his attorneys, JAY GOLDGERG, P.C., a member of the Bar of this court, as and for his Complaint alleges as follows:

# TABLE OF CONTENTS

THE CRITICAL ISSUES INVOLVED
IN THIS CASE AND CONTROVERSY.............................................................6-8

Plaintiff Has Brought The Action Timely........................................................8-9

JURISDICTION AND VENUE..........................................................................9

PARTIES.......................................................................................10-16

THE SPEECH OR DEBATE CLAUSE DOES NOT INSULATE
REFERENCE TO DEFENDANTS' SPEECH OR CONDUCT
WITH RESPECT TO PLAINTIFF'S MATTER AND THE EVENTUAL
RECOMMENDATION TO THE HOUSE AND THE VOTE THEREON....................17-18

FACTS AND CIRCUMSTANCES COMMON
TO ALL CLAIMS FOR RELIEF....................................................................18-25

Plaintiff Has A Protected Liberty Interest.......................................................25-26

It Would Be Improper For The Defendants To Submit
The Quantum Of Evidence Of Plaintiff's Alleged
Wrongdoing, For In This Case, There Is A Legal
Impediment Barring The Imposition Of A Sanction...............................................26

Article 1, Section 5, Clause 2 And The "Rules Of Its
[The House's] Proceedings," Is Designed To Protect
Plaintiff's Due Process Rights, His Other Fundamental
Constitutional Rights, His Rights To Confrontation,
Cross-Examination And The Right To A Fair Trial.................................................27

Plaintiff's Constitutional Right To An
Unbiased, Impartial, Adversarial Adjudicatory
Subcommittee Hearing Was Violated................................................................28

The Failure To Turn Over Material Relating To The
Misconduct Of Republican Members, Which Probably
Would Have Led To A Different Outcome Had
Plaintiff's Rights To Due Process And His Fundamental
Constitutional Rights Been Adhered To..........................................................28-29

STANDING......................................................................................29-30

THE CASE AND CONTROVERSY IS JUSTICIABLE.................................................30

THERE IS NO POLITICAL QUESTION INVOLVED
IN THIS CASE AND CONTROVERSY……………………………………………………..31

THE CASE AND CONTROVERSY IS NOT MOOT, BUT RATHER,
IT IS RIPE FOR A DECISION BY THIS COURT…………………………………….……..31-32

FIRST CLAIM FOR RELIEF:
FOR A DECLARATORY JUDGMENT……………………………………..………………...32-33

SECOND CLAIM FOR RELIEF:
FOR A MANDATORY PERMANENT INJUNCTION…………………………………………...33

THIRD CLAIM FOR RELIEF:
FOR AN ORDER OR WRIT IN THE NATURE OF MANDAMUS
BROUGHT AGAINST SPEAKER BOEHNER AND KAREN HAAS
SO AS TO ENABLE THE COURT TO RENDER A JUDGMENT
WHICH IS COMPLETE AND EFFECTIVE………………………….......………………………..34

## THE CRITICAL ISSUES INVOLVED
## IN THIS CASE AND CONTROVERSY

Article 1, Section 5, Clause 2 of the Constitution (sometimes referred to as the "Constitutional Provision") provides:

> Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behavior, and, with the Concurrence of two-thirds, expel a Member. (emphasis added)

The issues before the court in this case and controversy are as follows: (1) the textual meaning and effect of the violation of the Constitutional Provision, particularly the meaning and effect of the underlined portion; (2) the effect of numerous flagrant, knowing and intentional violations of Plaintiff's Due Process rights and his other fundamental constitutional rights by a majority of the Members of the Committee charged with recommending a sanction to the House, where prior to the vote of the House, the House was knowingly deceived by the Chair of the Committee and the Ranking Member to the effect that all prior proceedings had been conducted in accordance with procedural rules and the protection of Plaintiff's constitutional rights, knowing then that their statements were false at the time they made such statements; and (3) whether such egregious misconduct, as more fully described below, resulted in the House lacking the condition precedent for disciplining Plaintiff.

\*\*\*

There was no discussion by the Framers at the Constitutional Convention of the meaning or intention of the Constitutional Provision which reads "Each House may determine the Rules of its Proceedings." The only discussion of Article 1, Section 5, Clause 2 by the Framers centered on what was necessary to expel a Member. Still, even in that regard, there was no discussion of the said portion.

The language appearing in the Constitution under Article 1, Section 5, Clause 2, first appeared in Committee of Detail IV, where the Constitutional Provision read:

> The house of delegates shall have power over its own members. The house shall have the power to make rules for its own government.

The language next appeared in Committee of Detail VI, where the Constitutional Provision read:

> Each house shall have Authority to (settle) *determine* the Rules and Order of its Proceedings, and (have power) to punish its own Members *for disorderly (and indecent) Behaviour.* Each House may expel a Member, but not a second Time for the same Offence.

The language next appeared in Committee of Detail VII, where the Constitutional Provision read:

> Each House shall appoint its own Speaker and other Officers, and settle its own Rules of Proceedings; but neither the Senate nor H.D. shall have the power to adjourn for more than Days, without the (other) Consent of both.

The language next appeared in Committee of Detail IX, where the Constitutional Provision read:

> Each House (shall have Authority to) *may* determine the Rules of its Proceedings, (and to) *may* punish its (own) Members for disorderly Behaviour. (Each House) *and* may expel a Member, (but not a second Time for the same Offence).

On August 6, 1787, the version of the Constitutional Provision presented by the Committee of Detail for use in the first draft of the Constitution read:

> Each House may determine the rules of its proceedings; may punish its members for disorderly behaviour; and may expel a member.

There was no discussion regarding the meaning and effect of the phrase "Each House may determine the Rules of its Proceedings" in what was recorded from the August 10, 1787, debate on the Constitutional Provision. The entire debate on the Constitutional Provision, held on August 10, 1787, focused on what is necessary to expel a Member.

On September 12, 1787, the Committee on Style submitted a draft of said Constitutional Provision for the use in the Constitution, which read:

> Each house may determine the rules of its proceedings; punish its members for disorderly behaviour, and, with the concurrence of two-thirds, expel a member.

There is nothing in the words from the delegates that they meant to dispense with the centuries old protection of Due Process and fundamental constitutional rights.

Perhaps the most thorough analysis of the Constitution and the words of the Framers was contained in the book written by Justice Joseph Story in 1835, *Commentaries on the Constitution.* There is no mention of the meaning of the phrase "Each House may determine the Rules of its Proceedings," let alone whether compliance therewith in terms of affording a Member protection of his Due Process rights and his other fundamental constitutional rights is a condition precedent for discipline. It thus falls upon the court to give textual meaning and effect to the terms of Article 1, Section 5, Clause 2 of the Constitution, and to give meaning and effect to the violation thereof by Members having the responsibility to recommend to Congress a sanction, if any, to be imposed.

There is no decided case interpreting the phrase: "Each House may determine the Rules of its Proceedings."

## Plaintiff Has Brought The Action Timely

1. While is true that the Senate is a continuing Body, the House is not and must be viewed as changing with every session of Congress. The misconduct in this case occurred during the 111th Congress. It has been the Defendants' mistaken position that the time for Plaintiff to have sought a remedy would be before the 111th session of Congress had expired.

2.    The wrongful conduct was first discovered when two memoranda written by R. Blake Chisam, Chief Counsel for the Adjudicatory Subcommittee of the Committee on Standards of Official Conduct, to Representative Zoe Lofgren, Chair of the Committee, were uncovered in July 2011. (Exhibit A).

3.    The memoranda reflects that they are "not exhaustive," and contain "only several examples" of the wrongdoing, while continuing to conceal the rest. (See Exhibit A).

4.    Plaintiff's present action asks for disclosure of all the wrongdoing (not just the several examples). Any statute of limitations, were it applicable, would give rise to the doctrine of tolling.

5.    If an error of constitutional magnitude is uncovered, and the "Rules of its [the House's] Proceedings" are violated, and violations of Plaintiff's Due Process and other fundamental constitutional rights have been revealed, a timely motion may be pursued to vacate such unconstitutional governmental action.

6.    To this day, the full knowledge possessed by Mr. Chisam, as to the wrongdoing that had occurred before the Members of the Adjudicatory Subcommittee and at the Sanction Hearing remains undisclosed.

### JURISDICTION AND VENUE

7.    The United States District Court for the District of Columbia has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution of the United States. Venue in the United States District Court for the District of Columbia is proper pursuant to 28 U.S.C. § 1391, as this is the judicial district in which a substantial part of the events giving rise to this claim occurred.

## PARTIES

8.  Plaintiff, Representative Charles B. Rangel, elected in 2008 by New York's Fifteenth

    Congressional District, and having served as Chair of the House Ways and Means

    Committee from January 4, 2007, through March 3, 2010, was, on the recommendation

    of the Committee on Standards of Official Conduct, sanctioned by a vote of the House

    with a "censure" on December 2, 2010, under Article 1, Section 5, Clause 2 of the United

    States Constitution.

9.  Defendant, Representative John A. Boehner, as Speaker of the House of Representatives,

    is named as a party, for in his absence, it is submitted, the court cannot accord complete

    relief as prayed for;

10. Defendant, Karen L. Haas, as Clerk of the House of Representatives, is keeper of The

    Journal of the House's Proceedings, a public document required to be kept by Article 1,

    Section 5, Clause 3 of the Constitution.  The sanction of censure imposed upon Plaintiff

    was recorded in The Journal of the House's Proceedings;

11. Defendants, Speaker Boehner and Ms. Haas are essential to effectuate relief, should it be

    ordered by this court.

12. Defendant, Representative Zoe Lofgren, as former Chair of the Committee on Standards

    of Official Conduct of the House, and former Chair of its then Adjudicatory

    Subcommittee, upon Information and Belief, knowingly, intentionally, willfully, and in

    obvious violation of the "Rules of its [the House's] Proceedings," chosen to be enacted

    by the House as an essential requirement of Article 1, Section 5, Clause 2, [2 U.S.C. §

    29d] deceptively misrepresented what had occurred during the proceedings before the

    Committee and at the Adjudicatory Subcommittee Hearing, when she advised the

Committee at the publicly aired Sanction Hearing and more importantly, the Members of

the House itself, prior to the vote, that Plaintiff's pre-vote proceedings were conducted

fairly, honestly, without bias and according to the law, when she knew this was not so.

(See Exhibit B).   What makes her statement particularly egregious is that she had

instructed Members of the Adjudicatory Subcommittee at the opening of Hearing as

follows:

> As Members of the Adjudicatory Subcommittee, we are neither accusers nor
> defenders of our colleague, Mr. Rangel. Our job is to act impartially as finders of
> fact and law. We are honor bound to do so without regard to partisanship or bias
> of any sort. We are required to act honestly and fairly based on the evidence
> presented to us during the Adjudicatory hearing.
>
> ***
>
> In conducting this hearing, the Adjudicatory Subcommittee will follow the
> procedures established by the Rules of the Committee. (Exhibit C)

13.   <u>Defendant, Representative Jo Bonner</u>, as former Ranking Member of the Committee on

Standards of Official Conduct of the House of Representatives, and former Chair of the

Committee on Ethics, upon Information and Belief, knowingly, intentionally, willfully,

and in obvious violation of the "Rules of its [the House's] Proceedings," chosen to be

enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, [2

U.S.C. 29(d)] deceptively misrepresented what had occurred during the proceedings

before the Committee and at the Adjudicatory Subcommittee Hearing, when he misled

the Committee at the publicly aired Sanction Hearing and the Members of the House

itself prior to the vote, by stating that Plaintiff's pre-vote proceedings were conducted

with fairness, led only by the facts and the law. (See Exhibit D).

14.   <u>Defendant, R. Blake Chisam</u>, as former Staff Director/Chief Counsel of the Committee

on Standards of Official Conduct of the House of Representatives and Chief Counsel of

its then Adjudicatory Subcommittee, upon Information and Belief, knowingly, intentionally, willfully and in violation of the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, failed to fulfill his constitutional obligation to timely advise Plaintiff in this quasi-judicial proceeding. The Committee has accepted a report that states that the proceedings before the Adjudicatory Subcommittee can at times be thought of as analogous to a criminal proceeding. An Investigative Subcommittee acts as a grand jury to determine probable cause to believe a violation of the House's Code of Official Conduct has been committed. The Adjudicatory Subcommittee may be thought of as a trial tribunal. Mr. Chisam did not meet his constitutional obligation when he failed to promptly notify Plaintiff of what had occurred prior to the Sanction Hearing, thereby frustrating the goal of assuring adherence to Plaintiff's Due Process rights and the protection of his other fundamental constitutional rights.

15. Mr. Chisam, aside from serving as a Chief Counsel to the Adjudicatory Subcommittee of the Committee, had a separate staff relating to matters regarding the management of the Committee's affairs and a separate staff who were responsible for presenting material in support of the charges against Plaintiff, this before the Adjudicatory Subcommittee of the Committee.

16. Defendant, C. Morgan Kim, one of the two wrongdoing members of Mr. Chisam's staff, as former Deputy Chief Counsel of the Committee on Standards of Official Conduct, served in the capacity of presenting material in Plaintiff's matter before the Investigative Subcommittee of the Committee on Standards of Official Conduct.

17. The Investigative Subcommittee of the Committee was comparable to a grand jury in a criminal proceeding. Ms. Kim was not a member of the Adjudicatory staff assigned to Plaintiff's matter.

18. Upon Information and Belief, Ms. Kim knowingly, intentionally, willfully and in violation of the "Rules of the its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, wrongfully submitted only to Republican Members of the Adjudicatory Subcommittee, and some members of their staff, secret, substantive, impermissible *ex-parte* communications orally, through e-mails and furnished documents, relating to Plaintiff's case (whether said materials were testimonial or non-testimonial), thereby frustrating the goal of assuring adherence to Plaintiff's Due Process rights and the protection of his other fundamental constitutional rights.

19. Defendant, Stacey Sovereign, one of the two wrongdoing members of Mr. Chisam's staff, as former Counsel to the Committee on Standards of Official Conduct of the House, did not serve on the Adjudicatory Subcommittee staff in Plaintiff's matter, but served in the capacity of presenting material to the Investigative Subcommittee of the Committee on Standards of Official Conduct in Plaintiff's.

20. Upon Information and Belief, Ms. Sovereign knowingly, intentionally, willfully and in violation of the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, wrongfully submitted only to Republican Members of the Adjudicatory Subcommittee, and some members of their staff, secret, substantive, impermissible *ex-parte* communications orally, through e-mails and furnished documents, relating to Plaintiff's case (whether said materials were

testimonial or non-testimonial), thereby frustrating the goal of assuring adherence to Plaintiff's Due Process rights and the protection of his other fundamental constitutional rights.

21. Defendant, Representative Michael T. McCaul, as a former Member of the Committee on Standards of Official Conduct of the House of Representatives and Ranking Member of its then Adjudicatory Subcommittee, instructed Members of the Adjudicatory Subcommittee as follows:

> Our responsibility as judges in this matter is to be fair and impartial...And as judges in this matter, it is our responsibility to make sure the process is both fair and dignified. (Exhibit E).

22. Upon Information and Belief, Rep. McCaul violated his own instruction when he knowingly, intentionally and willfully failed to comply with the "Rules of its [the House's] Proceedings," enacted as an essential requirement of Article 1, Section 5, Clause 2, in that he received and retained from Ms. Kim and Ms. Sovereign, secret, substantive, impermissible *ex-parte* communications orally, through e-mails and furnished documents, relating to Plaintiff's case (whether said materials were testimonial or non-testimonial) rendering himself biased as a matter of law.

23. Mr. Chisam, as set forth in Exhibit A, represented that Rep. McCaul demonstrated prejudice when Mr. Chisam reported in his memoranda: "I personally found his [Rep. McCaul's] suggestions [referring to how Mr. Chisam was handling the matter] offensive and potentially suggestive of a bias toward a certain result in the Rangel matter." (Exhibit A, page 2).

24. Defendant, Republican Representative K. Michael Conaway, as a former Member of the Committee on Standards of Official Conduct of the House of Representatives and a

Member of its then Adjudicatory Subcommittee, and as present Chair of the Committee on Ethics, upon Information and Belief knowingly, intentionally and willfully failed to comply with the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, when he received and retained from Ms. Kim and Ms. Sovereign secret, substantive, impermissible *ex-parte* submissions orally, through e-mails and furnished them with documents, relating to Plaintiff's case (whether said materials were testimonial or non-testimonial), which he did not disclose to all of the Members of the Adjudicatory Subcommittee, or Members of the Committee, or to Plaintiff, or to Members of the House who voted on December 2, 2010, thereby frustrating the goal of assuring adherence to constitutional restraints and protection of Plaintiff's Due Process rights, as well as the protection of his other fundamental constitutional rights, and establishing his bias as a matter of law;

25.    Defendant, Representative Charles W. Dent, as a former Member of the Committee on Standards of Official Conduct of the House of Representatives and a Member of its then Adjudicatory Subcommittee, upon Information and Belief, willfully and intentionally failed to comply with the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, when he received and retained from Ms. Kim and Ms. Sovereign secret, substantive, impermissible *ex-parte* communications orally, through e-mails and furnished them with documents, relating to Plaintiff's case (whether said materials were testimonial or non-testimonial), which he did not disclose to all of the Members of the Adjudicatory Subcommittee, or Members of the Committee, or to Plaintiff, or to Members of the House who voted on December 2, 2010, thereby frustrating the goal of assuring

adherence to constitutional restraints and protection of Plaintiff's Due Process rights, as well as the protection of his other fundamental constitutional rights, and establishing his bias as a matter of law;

26. Defendant, Representative Gregg Harper, as a former Member of the Committee on Standards of Official Conduct of the House of Representatives and a Member of its then Adjudicatory Subcommittee, upon Information and Belief, knowingly, intentionally and willfully failed to comply with the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2, when he received and retained from Ms. Kim and Ms. Sovereign secret, substantive, impermissible *ex-parte* communications orally, through e-mails and in furnished documents, relating to Plaintiff's case (whether said materials were testimonial or non-testimonial), which he did not disclose to the Democratic Members of the Adjudicatory Subcommittee, or Members of the Committee, or to Plaintiff, or to Members of the House who voted on December 2, 2010, thereby frustrating the goal of assuring adherence to constitutional restraints and protection of Plaintiff's Due Process rights, as well as the protection of his other fundamental constitutional rights, and establishing his bias as a matter of law.

\*\*\*

27. The totality of the wrongful behavior and the above described misconduct offends the view that the American system of justice requires persons sitting in the capacity of "judges" in a quasi-judicial proceeding must not only avoid prejudice and bias, but must also avoid the appearance of prejudice and bias.

**THE SPEECH OR DEBATE CLAUSE DOES NOT INSULATE**
**REFERENCE TO DEFENDANTS' SPEECH OR CONDUCT**
**WITH RESPECT TO PLAINTIFF'S MATTER AND THE EVENTUAL**
**RECOMMENDATION TO THE HOUSE AND THE VOTE THEREON**

28.    The privilege embodied in the Speech or Debate clause was to protect the integrity of the legislative process and the conduct of legislative affairs, but here, the named Defendants (with the exception of Speaker Boehner and Ms. Haas) acted knowingly, intentionally and willfully in violation of what was required to fall within the privilege.

29.    Chair Lofgren and Rep. Bonner are not protected by the Speech or Debate clause when they acted knowingly, intentionally and willfully to frustrate the goal of assuring adherence to Plaintiff's Due Process rights and the protection of his fundamental constitutional rights by misleading the House that all prior proceedings were conducted fairly, honestly and without bias.

30.    Activities designed to provide an advantage or to inform one political party in a bipartisan tribunal such as the Adjudicatory Subcommittee of the Committee are not protected by the Speech or Debate clause.

31.    The Speech or Debate clause cannot be read in isolation from the entire constitutional scheme; judicial respect for and enforcement of the Bill of Rights is no less important than respect for the prerogatives of individual Representatives, especially when the Constitution itself and its essential requirements are knowingly, intentionally and willfully violated to the detriment of Plaintiff's Due Process rights and his other fundamental constitutional rights.

32.    The privilege providing for protection of speech or conduct under Article 1, Section 6 was waived when the House chose to broadcast all proceedings on public television; and to that extent, Rep. McCaul's statement that all Members of the Adjudicatory

Subcommittee were to act as "judges" is clearly admissible, as well as the opening statements of Chair Lofgren and the misleading statements made by then Chair Lofgren and Ranking Member Bonner on or about November 18, 2010 concerning how the pre-vote proceedings had been conducted.

33.     The judiciary in our country has always borne the institutional responsibility for protecting individuals against unconstitutional violations of their Due Process rights and other fundamental constitutional rights by any and all branches of the government, and it must do so here to vindicate rights inherent to the American system of justice.

## FACTS AND CIRCUMSTANCES COMMON
## TO ALL CLAIMS FOR RELIEF

34.     The Committee is a Standing Committee charged with enforcing the House's Code of Official Conduct (the "Code"), by and through an Adjudicatory Subcommittee which is in the nature of an adversarial quasi-judicial tribunal. Following a determination that there is clear and convincing evidence that a violation of the Code has occurred, the full Committee holds a Sanction Hearing and at the end of same recommends to the House what the sanction should be.

35.     In the 112th Congress, the Committee on Standards of Official Conduct was renamed as the Committee on Ethics, but the rules remain the same except for minor changes relating to the subpoena power.

36.     The *Foreword* to the "Rules of its [the House's] Proceedings" referred to in Article 1, Section 5, Clause 2 was meant to assure a fair procedural process with respect to the proposed discipline of a Member. (See Exhibit F).

37. The procedure contained in the "Rules of its [the House's] Proceedings," the chosen essential requirement of Article 1, Section 5, Clause 2 as to discipline, which in all respects is fair and comports with Due Process, is as follows (see Exhibit F):

    a. Pursuant to House Rule XI, Clause 3(a), when administrative action is recommended by the House as to a possible violation of the Code of Official Conduct by a Member and it is found to warrant the review of the Committee, the matter is referred to the Committee;

    b. Under Committee Rule 19(a) of the "Rules of its [the House's] Proceedings," the Committee, if necessary, refers the matter to an Investigative Subcommittee, which acts in a manner comparable to the grand jury, to determine if a Statement of Alleged Violation should issue;

    c. Pursuant to Committee Rule 23(a) of the "Rules if its [the House's] Proceedings," if a Statement of Alleged Violation (i.e. comparable to an indictment) is issued, the Chair of the Committee designates eight Members of the Committee, four Democrats and four Republicans, who did not serve on the Investigative Subcommittee, to serve on the adversarial Adjudicatory Subcommittee. The Adjudicatory Subcommittee then holds an adversarial Adjudicatory Hearing, which is comparable to a criminal trial, in which the Members are instructed to act in the capacity of "judges" to determine whether any counts of a Statement of Alleged Violation are proven by clear and convincing evidence. The Chair of the Committee presides;

    d. Committee Rules 24(b) and 24(c) of the "Rules of its [the House's] Proceedings" provide that if the Adjudicatory Subcommittee completes its

Hearing and finds any counts of a Statement of Alleged Violation to be proven, a Sanction Hearing is held before the full Committee to determine what sanction, if any, to recommend to the House;

e.  The full Committee may render a report that the claimed violation has not been proven. On the other hand, if proven, the lowest form of discipline is a "letter of reproval." The next is a "letter of reprimand." The sanction of "censure" is more serious and requires the Member to stand in the well of House, while the Speaker of the House reads the Resolution aloud. The final sanction is an "order of expulsion," which requires a vote of two-thirds of the Members.

\*\*\*

38.  It is averred that Exhibit A is essential reading, for it evidences a knowing, intentional and willful frustration of the process to afford protection of Plaintiff's Due Process rights and his other fundamental constitutional rights in the course of determining whether there is clear and convincing evidence of his wrongdoing.

39.  What was revealed in Exhibit A was misconduct in Plaintiff's proceedings, not discovered until July 2011.

40.  In this case and controversy it is essential that there be full utilization of the discovery provisions contained in the Federal Rules of Civil Procedure.

41.  This court, and counsel for Plaintiff, need-to inspect the contents of all materials wrongfully given, on an impermissible *ex-parte* basis, whether testimonial or non-testimonial, to Republican Members of the Adjudicatory Subcommittee, for Mr. Chisam's memoranda recite only <u>several examples</u> of the misconduct that occurred.

42. So too, depositions must be taken for the purpose of discovering secret, substantive, impermissible *ex-parte* communications submitted orally, through e-mails and furnished documents to Republican Members of the Adjudicatory Subcommittee.

\*\*\*

43. It is of great interest that Mr. Chisam opined that terribly racist comments made by errant staff members, Ms. Kim and Ms. Sovereign, possibly resulted in their improper conduct.

44. On one occasion, according to Mr. Chisam, Ms. Kim said to Ms. Sovereign in an email, "Wow, so glad we have a member of the CBC [Congressional Black Caucus] in our midst." On another occasion, Mr. Chisam reports that Ms. Sovereign made a statement to the effect that black jurors lacked the capacity or the will to render an unbiased verdict, because she was a white, blonde and blue-eyed Assistant United States Attorney.

45. A member of Mr. Chisam's staff also commented, objecting to the addition to the staff of Prince George's County Prosecutors because "… I'll just say it – they're just not as smart" as the white members of the staff.

46. It appears the long ugly arm of racism remains present, but it certainly should not be present in the halls of Congress.

47. The record is unclear as to whether the racist views of Ms. Kim or Ms. Sovereign were conveyed to any other Republican Member to whom they gave the secret, substantive, impermissible *ex-parte* material.

\*\*\*

48. Mr. Chisam conceded in one of his memoranda that by their misconduct, Ms. Kim and Ms. Sovereign had acted in a way so as:

> [T]o create a clear and present danger to the Committee's activities… with respect to the Rangel … matter. (Exhibit A, Page 1).

49.   Mr. Chisam also made the following statement concerning his Motion for Summary Judgment:

> In my judgment, the Committee is very fortunate that I elected to proceed with a [summary judgment] motion and that Rangel walked out.   Given that the Chair indicated on the record that the motion would have been held in abeyance if Rangel wanted to examine witnesses, I am concerned that Ms. Kim's adversarial communications with the fact finder would have so tainted the proceeding that there would have been no option but to move to dismiss. (Exhibit A, Page 3). (emphasis added).

50.   Mr. Chisam's Motion for Summary Judgment was unprecedented in a Hearing of this kind and was used as a stratagem to avoid giving Plaintiff the opportunity to call a witness.

51.   Had Plaintiff known of all the misconduct that preceded the Adjudicatory Hearing, it is likely he would have had a view not to leave the hearing. One may not, consistent with the Constitution, justify what Mr. Chisam did in suppressing the wrongdoing that he knew had occurred.

52.   Plaintiff promptly, after learning of the contents of Mr. Chisam's memoranda, filed a motion for various and sundry relief on August 9, 2011 (Exhibit G), which specifically included, among other prayers, that the four Republican Members who served on the Adjudicatory Subcommittee and received *ex-parte* material should have recused themselves from any decision-making - for by operation of law, they should have been

deemed biased. The same is true as to Chair Lofgren and Ranking Member Bonner, by reason of their misrepresentation before the Sanction Hearing as to what had occurred prior to the Adjudicatory Subcommittee Hearing.

53. The result of these recusals would have left the Committee without a quorum to act under Rule 9 of the "Rules of its [the House's] Proceedings."

54. The Committee responded to Plaintiff's motion on August 26, 2011 (Exhibit H), writing that it had retained Billy Martin to act as outside counsel in the matter of Representative Waters, and that the Committee would wait until it had the benefit of Mr. Martin's analysis in that matter before responding to Plaintiff's motion.

55. On September 7, 2011, Plaintiff objected to the procedure which the Committee was taking. (See Plaintiff's counsel's letter dated September 7, 2011, contained in Exhibit J).

56. On September 23, 2011, Plaintiff further set forth his objection to the procedure of reviewing the Rep. Waters matter first, in a letter which included compelling case law and authority to support his position. (See Plaintiff's counsel's letter dated September 23, 2011, contained in Exhibit J).

57. On October 14, 2011 Plaintiff made it clear that the House lacked the predicate to impose discipline as it failed to adhere to the "Rules of its [the House's] Proceedings." (See Plaintiff's counsel's letter dated October 14, 2011, contained in Exhibit J).

58. On September 25, 2012, the Committee released the Martin Report, recommending the dismissal of Rep. Waters' matter on the merits. The report opined that the confrontation clause did not prohibit the staff from speaking with the Investigative Subcommittee Members, but the Rep. Waters matter was never before an Adjudicatory Subcommittee.

59.   On December 19, 2012, the Committee responded to Plaintiff, stating that it would not re-open Plaintiff's matter. (Exhibit I). The Committee improperly relied on the Martin Report in making this decision.

60.   There is no rule permitting *ex-parte* conversations and the turnover of substantive material relating to a Member's case when Members are sitting as "judges" in an Adjudicatory Subcommittee Hearing (comparable to a trial tribunal).

61.   Under these circumstances, the Martin Report can have no bearing on the issues involved in the matter at bar, which was substantively and procedurally different from an Investigative Subcommittee Hearing.

62.   It is offensive to the American system of justice that the Committee permitted Members deemed to be biased to decide whether to retain Outside Counsel to investigate what had occurred in Plaintiff's matter and decide whether relief should be granted to Plaintiff.

63.   Exhibit J contains numerous and repeated written efforts made by Plaintiff's Counsel to then Chair Bonner and Dan Schwager, now Staff Director/Chief Counsel of the Committee on Ethics, citing appropriate authority to obtain corrective action with respect to Plaintiff's matter. The Committee has summarily dismissed the motion filed by Plaintiff, has not allowed for any discovery and has not recused any of the offending Members.

64.   The knowing, intentional and willful misconduct described herein irrevocably tainted the proceedings before the Adjudicatory Subcommittee, the Committee, its Sanction Hearing, as well as the vote of the full House on December 2, 2010.

65.   It must be presumed from the deceptive statements made by Chair Lofgren and Rep. Bonner that the Members of the House who voted on December 2, 2010, believed, in

error, that all prior proceedings met the commands of constitutional restraints and protected Plaintiff's Due Process rights and his other fundamental constitutional rights.

**Plaintiff Has A Protected Liberty Interest**

66.     Plaintiff, whether present or not, had the expectation that the Committee would respect his rights, for the Committee in its Foreword to the Rules provided as follows:

> "The Committee on Standards of Official Conduct is unique in the House of Representatives. Consistent with the duty to carry out its advisory and enforcement responsibilities in an impartial manner, the Committee is the only standing committee of the House of Representatives the membership of which is divided evenly by party. These rules are intended to provide a fair procedural framework for the conduct of the Committee's activities and to help ensure that the Committee serves well the people of the United States, the House of Representatives, and the Members, officers, and employees of the House of Representatives." (See Exhibit F).

67.     Aside from misleading the House that constitutional restraints and the fundamental constitutional rights of Plaintiff were protected, the fact is that there was egregious and irreparable harm to Plaintiff by reason of the violation of Plaintiff's right to seek redress for the violation of his protected liberty interest, when the following occurred after the censure: in the 112th Congress, Plaintiff was only granted ex-officio status on all Ways and Means Subcommittees, but without having voting rights as other Member assigned to Subcommittee. After the censure, it was exploited by a political opponent in the 2012 Democratic primary election (in a news release available to the public) and it is expected that the same will take place in any future election in which Plaintiff is a candidate. (See Exhibit K).

68.   While a person's interest in his integrity is one of the facets of the right to liberty contemplated by the Due Process clause, it has been held that harm to one's reputation, standing alone, is not a constitutional violation of one's protected liberty interest.

69.   However, reputational harm rises to the level of a constitutional violation if in connection with it, some other concrete right or status is altered or extinguished and thus, a Plaintiff in a matter of this kind must present a "stigma-plus" Due Process claim.

70.   A "stigma-plus" claim can be raised by an elected official.

71.   The Journal of the House's Proceedings, required to be kept and maintained for all time pursuant to Article 1, Section 5, Clause 3, will forever reflect the sanction, which we posit went beyond the authority and power of the Congress to impose.

**It Would Be Improper For The Defendants To Submit
The Quantum Of Evidence Of Plaintiff's Alleged
Wrongdoing, For In This Case, There Is A Legal
Impediment Barring The Imposition Of A Sanction**

72.   Where, as here, there is a violation of constitutional magnitude - a violation of Plaintiff's Due Process and other fundamental constitutional rights - Plaintiff is entitled to vacate any finding of wrongdoing, despite the argument that there is clear and convincing evidence of wrongdoing, this, to vindicate the American system of justice.

73.   It therefore would be improper to lay before the court the quantum of evidence justifying censure, for this is a case and controversy going to the very jurisdiction of the House to impose discipline in light of the terrible misconduct described above.

**Article 1, Section 5, Clause 2 And The "Rules Of Its
[The House's] Proceedings," Is Designed To Protect
Plaintiff's Due Process Rights, His Other Fundamental
Constitutional Rights, His Rights To Confrontation,
Cross-Examination And The Right To A Fair Trial**

74.    Due Process and fundamental constitutional rights, including the right to confrontation,

cross-examination and a fair trial, were violated.

75.    The Committee itself recognizes the right of confrontation pursuant to Committee Rule

23 of the "Rules of its [the House's] Proceedings," namely, that a Member facing

discipline has the right to cross-examine witnesses and to inspect documentation

purportedly supporting the claimed wrongdoing.

76.    Such inspection cannot be had where there is a submission of secret impermissible *ex-

parte* material relating to the substance of Plaintiff's matter submitted to four Members of

the eight Member fact-finding tribunal.

77.    The right of confrontation and cross-examination are core principles of the American

system of justice that were included in the constitutions of all thirteen original colonies

and are designed to test trustworthiness.

78.    If the material that was made available on an *ex-parte* basis to Republican Members was

testimonial, the right of confrontation and cross-examination would be violated. If the

material that was made available on an *ex-parte* basis to Republican Members was non-

testimonial, Plaintiff's right to a fair trial would be violated, for the whole of *ex-parte*

submissions on the substance of one's matter wrongly intrudes upon the right to a fair

trial.

**Plaintiff's Constitutional Right To An**
**Unbiased, Impartial, Adversarial Adjudicatory**
**Subcommittee Hearing Was Violated**

79.    Plaintiff's level of discipline really was held in the balance, for after a two-year investigation, Mr. Chisam reported that in his opinion, the cause of Plaintiff's conduct was due to sloppiness and not corruption. (See Exhibit L).  The need was particularly important for Plaintiff to have an unbiased tribunal, but that did not happen as a result of the four Republican Members who were biased as matter of law and should have recused themselves.

80.    Chair Lofgren and Rep. Bonner who made false and deceptive statements prior to the Sanction Hearing that constitutional restraints and the fundamental constitutional rights of Plaintiff were protected, should too have recused themselves from decision-making, thereby leaving the Sanction Committee and the Committee without a quorum to act.

81.    The essence of Due Process requires that there be a fair and impartial tribunal, particularly so, when Members of the Adjudicatory Subcommittee are instructed to act as "judges," and the consequence of their decision can result in serious damage to one's integrity, as a violation of a Member's liberty interest in the form of public stigmatization-plus.

**The Failure To Turn Over Material Relating To The**
**Misconduct Of Republican Members, Which Probably**
**Would Have Led To A Different Outcome Had**
**Plaintiff's Rights To Due Process And His Fundamental**
**Constitutional Rights Been Adhered To**

82.    Mr. Chisam specifically states in his memoranda (Exhibit A, page 3) that had Rep. Rangel called a witness, he would have had no option but to move to dismiss the proceedings.  On what basis did he assert that he would have had no option? He details

several examples, but states the examples are not exhaustive. He failed to advise Plaintiff of the wrongdoing involved in the *ex-parte* receipt by Republican Members of material relating to the substance of Plaintiff's case, the full extent of the wrongdoing committed by his staff and the basis for his statement that there was a clear and present danger to the integrity of the proceedings against Plaintiff.

83.     The suppressed material would probably have led to a different outcome. Rep. Rangel, had he known the facts, would not likely have left the hearing after the unique motion for summary judgment, but would have made a motion to dismiss by reason of the wrongdoing that should have been disclosed by Mr. Chisam.

84.     The use of a unique motion for summary judgment in order to prevent Rep. Rangel from being able to call witnesses was concededly acknowledged by Mr. Chisam as a stratagem to avoid his having to dismiss all proceedings against Plaintiff.

## STANDING

85.     Plaintiff is guaranteed the protection of his Due Process and other fundamental constitutional rights originating in Article 1, Section 5, Clause 2 of the Constitution and the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of the Constitutional Provision. [The rules were established pursuant to 2 U.S.C. § 29d.]

86.     The House's action and the censure recorded in the permanent record of The Journal of the House's Proceedings, required to be kept by Article 1, Section 5, Clause 3 of the Constitution and made available to the public, for all time, have and will cause Plaintiff reputational harm, plus public stigmatization; and thus, Plaintiff has suffered and will

continue to suffer injury in fact, which is fairly and directly traceable to the imposed action. The injury will likely be redressed by a favorable decision of this court.

## THE CASE AND CONTROVERSY IS JUSTICIABLE

87.  It is the manifest duty of the court to vindicate a person's Due Process rights and other fundamental constitutional rights in a matter such as this, and to accomplish this, it is essential for the court to grant the remedial relief as set forth below.

88.  The court cannot, under the circumstances described above, leave undisturbed and without adequate remedy, a Plaintiff who has been knowingly, intentionally and willfully denied his right to Due Process, the protection of his other fundamental rights and his protected liberty interest, where the House has been purposely misled as described herein: he must have this court to repair to, in order to vindicate his constitutional rights.

89.  The matter is justiciable for the following reasons: this court is not called upon to anticipate a question of constitutional construction in advance of the necessity of deciding it; this court is not asked or requested to pass upon a constitutional question if there is also present some other ground upon which the case may be disposed of; and, this court cannot find a construction to avoid the constitutional question that is involved herein as to the required construction of Article 1, Section 5, Clause 2 of the Constitution.

90.  When a party invokes the process of the courts, it becomes the court's unsought responsibility to resolve the federal and constitutional issues the judicial system has been forced to confront. This is so even though it requires determining, authoritatively, the powers and responsibilities of the other branches of government.

91.  The court has a duty to decide a case or controversy when it requires, as here, the meaning and effect of a constitutional provision.

## THERE IS NO POLITICAL QUESTION INVOLVED
## IN THIS CASE AND CONTROVERSY

92.    This case and controversy involves the exercise of judicial power to determine the consequences of wrongful violations of Plaintiff's right to Due Process and his other fundamental constitutional rights, which are required to be protected by the "Rules of its [the House's] Proceedings," chosen to be enacted by the House as an essential requirement of Article 1, Section 5, Clause 2 of the Constitution.

## THE CASE AND CONTROVERSY IS NOT MOOT, BUT RATHER,
## IT IS RIPE FOR A DECISION BY THIS COURT

93.    It is an ideal of the American system of justice and an accepted principle of equity that for every wrong, as far as practicable, there must be a remedy.

94.    If an error of constitutional magnitude is uncovered, and the "Rules of its [the House's] Proceedings" are violated and violations of Plaintiff's Due Process and other fundamental constitutional rights have been revealed, a timely motion may be pursued to vacate such unconstitutional governmental action. Here, there was and continues to be, concealment of all the facts showing that the Committee has ignored constitutional restraints, violated fundamental constitutional rights and misled the House when it represented prior to the vote on December 2, 2010, that it had complied with all of the Plaintiff's constitutional rights and the command of Article 1, Section 5, Clause 2.

95.    Committee Rule 15(i) of the "Rules of its [the House's] Proceedings" does not limit the investigative jurisdiction into claimed wrongdoing solely to those occurring during the existing Congress.  (See Exhibit F).

96.    Plaintiff, who has been wrongfully disciplined, without adherence to the constitutional predicate for such action, during a previous term of the House, has the constitutional right

to bring proof of the wrongdoing earlier described to the House to protect his integrity against public stigmatization.

97.     As a result of constitutional violations and violations of procedural and substantive Due Process, Plaintiff will continue to suffer irreparable harm by reason of the sanction of censure noted in The Journal of the House's Proceedings, as well as in other records maintained and existing under the control of Defendants, the Adjudicatory Subcommittee of the Committee on Standards of Official Conduct, the Committee on Ethics and the House.

98.     Upon Information and Belief, it has been reported that some Members of the House of Representatives are scheduled to appear before the Committee on Ethics and its Adjudicatory Subcommittee.  Thus, there is a need to interpret the textual meaning of Article 1, Section 5, Clause 2 of the Constitution, insofar as it contains the phrase "[e]ach House may determine the Rules of its Proceedings," and the effect of purposeful noncompliance therewith.

## FIRST CLAIM FOR RELIEF:
## FOR A DECLARATORY JUDGMENT

99.     Plaintiff realleges each and every allegation contained in paragraphs 1-98 of this Complaint as though more fully set forth herein.

100.    Relief is sought under 28 U.S.C. §§ 2201 and 2202, in the form of the following declaration: the textual meaning and effect of Article 1, Section 5, Clause 2 and  the "Rules of its [the House's] Proceedings" require the protection of constitutional restraints and fundamental constitutional rights, where there is a knowing, intentional and willful violation of the Constitutional Provision by the Committee charged with recommending the sanction to be imposed by the House, and where the Chair of the Committee and its

Ranking Member falsely and deceptively mislead the House, prior to the House's vote on December 2, 2010, to sanction the Member by stating that all constitutional restraints and procedural rights had been recognized and that fundamental constitutional rights had been adhered to. As happened in Plaintiff's matter before the Committee, the House lacked the predicate to discipline Plaintiff by reason of the aforesaid violations.

101.    Plaintiff has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**FOR A MANDATORY PERMANENT INJUNCTION**

102.    Plaintiff realleges each and every allegation contained in paragraphs 1-101 of this Complaint as though more fully set forth herein.

103.    Relief in the form of a Mandatory Permanent Injunction is prayed for as a result of what occurred, as set forth in paragraph 100, requiring Defendants to take all necessary steps to vacate, strike and remove the recording of censure, as voted upon by the House and as set forth in The Journal of the House's Proceedings with respect to Plaintiff, as well as other records of the House of Representatives, the Committee, the Investigative Subcommittee, the Adjudicatory Subcommittee, and any other congressional record reflecting that the sanction of censure was imposed upon Plaintiff in accordance with the recommendation of the Committee on Standards of Official Conduct, following the materially tainted adversarial Adjudicatory Subcommittee Hearing.

104.    Plaintiff will continue to suffer irreparable harm that cannot be compensated by money damages. The balance of the equities, and the law and facts support Plaintiff's Complaint.

105.    Plaintiff has no adequate remedy at law.

106.    Recognizing that determining the relief to be ordered presents a difficult problem, the court should instruct the Defendants to fashion a remedy for the wrongs committed.

### THIRD CLAIM FOR RELIEF:
### FOR AN ORDER OR WRIT IN THE NATURE OF MANDAMUS
### BROUGHT AGAINST SPEAKER BOEHNER AND KAREN HAAS
### SO AS TO ENABLE THE COURT TO RENDER A JUDGMENT
### WHICH IS COMPLETE AND EFFECTIVE

107.   Plaintiff realleges each and every allegation contained in paragraphs 1-106 of this

Complaint as though more fully set forth herein.

108.   Relief in the form of an Order or Writ in the nature of mandamus is prayed for, requiring

Speaker Boehner and Karen Haas to cause to be removed from The Journal of the

House's Proceedings, any reference to the fact that Plaintiff had been censured, and to

remove any other records of the House reflecting that Plaintiff had been censured.

109.   Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff seeks the relief as recited in paragraphs 100, 103 and 108

together with such other and further relief as this court deems just and proper, together with the

costs and disbursements attendant to this action.

Yours etc.

Dated: New York, NY
        April 22, 2013

JAY GOLDBERG, P.C.

By: _____
        Jay Goldberg
250 Park Avenue
Suite 2020
New York, NY 10177
office@JayGoldberg.com

34